UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PUI SUN HO,

                Petitioner,

v.

KRISTI NOEM, *et al.*,

                Respondents.

Case No. C25-2222-RSM-MLP

REPORT AND RECOMMENDATION

## I.    INTRODUCTION

Petitioner Pui Sun Ho is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. He has filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 seeking release from custody. (Dkt. # 1.) Petitioner, who is proceeding through counsel, asserts that the government violated the Due Process Clause of the Fifth Amendment when it revoked his release without affording him a pre-deprivation hearing before a neutral adjudicator. (*Id.*) Respondents have filed a return (dkt. # 9), and Petitioner has filed a response to the return (dkt. # 11).

The Court, having considered the parties' submissions and the governing law, concludes that Petitioner's federal habeas petition should be granted, that Petitioner should be immediately

released from custody, and that Respondents should be prohibited from re-detaining Petitioner without a bond hearing before a neutral decisionmaker.

## II. BACKGROUND

Petitioner Pui Sun Ho is a 47-year-old native and citizen of Hong Kong. (Dkt. # 1, ¶ 26; dkt. # 10, ¶ 4.) He was admitted to the United States as a conditional lawful permanent resident ("LPR") in 1993 at the age of 15, adjusting to LPR status in 1995. (Dkt. # 1, ¶ 26; dkt. # 10, ¶ 5.)

In 2009, Petitioner was convicted in Oregon of unlawful delivery of a controlled substance, in violation of Oregon Revised Statute ("ORS") 475.880, and sentenced to three years of probation. (Dkt. # 1, ¶ 27; dkt. # 10, ¶ 8.) On May 16, 2013, ICE's Office of Enforcement and Removal Operations ("ERO") issued a notice to appear ("NTA") charging Petitioner as removable under 8 U.S.C. § 1227(a)(2)(A)(iii), for having been convicted of an aggravated felony. (Dkt. # 1, ¶ 28; dkt. # 10, ¶ 10.) On October 1, 2013, an immigration judge ("IJ") sustained the removability charge, terminated Petitioner's LPR status, and ordered his removal to Hong Kong. (Dkt. # 1, ¶ 28; dkt. # 10, ¶ 12.)

Petitioner was released from ICE detention around April 28, 2014, as the Department of Homeland Security ("DHS") could not obtain travel documents for his removal to Hong Kong. (Dkt. # 1, ¶ 29.) While on release, Petitioner was required to report to ICE approximately every six months. (*Id.*) In 2018, DHS obtained travel documents from the United Kingdom based on Petitioner's BN(O) status[1], and Petitioner was then detained at NWIPC pending his removal to Hong Kong. (*Id.*, ¶ 30.)

---

[1] BN(O) is an acronym for British National (Overseas), and prior to January 2021, a BN(O) travel document was recognized as valid to travel to Hong Kong. (*See* dkt. # 1, ¶ 30 n.3.)

REPORT AND RECOMMENDATION
PAGE - 2

  While detained at NWIPC in advance of his removal, Petitioner's counsel discovered the 2013 removal order was issued in error as Petitioner's 2009 conviction did not constitute an "aggravated felony" under § 1227(a)(2)(A)(iii). (Dkt. # 1, ¶ 31.) Petitioner moved to reopen his removal proceedings and an IJ denied the motion, a decision which Petitioner then appealed to the Board of Immigration Appeals ("BIA"). (*See id.*) Despite the pending appeal, DHS removed Petitioner to Hong Kong on September 26, 2018, using the BN(O) travel document. (*Id.*; dkt. # 10, ¶ 13.) On April 9, 2019, the BIA reversed the IJ's decision, granted Petitioner's motion to reopen, and terminated his administrative proceedings. (Dkt. # 1, ¶ 32; dkt. # 10, ¶ 14.) Petitioner's LPR status was restored on July 15, 2019, and he subsequently returned to the United States. (Dkt. # 1, ¶ 32; dkt. # 10, ¶ 15.)

  On October 21, 2022, ERO directed Petitioner to report to the Portland Field Office on November 17, 2022. (Dkt. # 1, ¶ 33; dkt. # 10, ¶ 17.) Petitioner complied and was taken into custody. (Dkt. # 1, ¶ 33.) ERO issued a new NTA, reinitiating removal proceedings based on Petitioner's 2009 conviction, charging him as removable under § 1227(a)(2)(B)(i) (controlled substance crime) and § 1227(a)(2)(B)(ii) (drug abuser or addict). (Dkt. # 1, ¶ 33; dkt. # 10, ¶ 18.) ICE officials then released Petitioner under an Order of Release on Recognizance ("OREC"), requiring regular reporting during his removal proceedings. (*See* dkt. # 1, ¶ 34; dkt. # 12, Ex. 1.)

  On January 30, 2025, an IJ ordered Petitioner removed to Hong Kong after denying his applications for relief. (Dkt. # 10, ¶ 23.) Petitioner appealed this order to the BIA on February 4, 2025, where it remains pending. (*Id.*, ¶ 24.) On or about May 22, 2025, the Oregon Circuit Court vacated Petitioner's 2009 drug conviction, on a motion by the State, after it was discovered that none of the substances that served as the basis of Petitioner's conviction tested positive for controlled substances. (*See* dkt. # 1, ¶ 27 n.2.)

On November 5, 2025, well before Petitioner's next scheduled ICE check-in[2], ICE officers arrived at Petitioner's home in Oregon, surrounded his vehicle, arrested him, and revoked his OREC. (Dkt. # 1 at 10.) Petitioner alleges he received no notice of OREC revocation, no grounds for it, and no opportunity to respond. (*Id.*, ¶ 35.) Petitioner was taken into custody in Portland, Oregon and transferred to NWIPC. (*Id.*) Respondents assert ERO cancelled the OREC due to the IJ's January 30, 2025, removal order, despite the ongoing BIA appeal. (*See* dkt. # 10, ¶ 25.)

Petitioner filed this habeas petition on November 7, 2025, challenging his re-detention as unconstitutional and seeking immediate release from ICE custody. (*See* dkt. # 1.) Petitioner also requests that Respondents be prohibited from re-detaining him without a prior pre-detention hearing before an IJ. (*Id.*)

### III.  DISCUSSION

Federal courts have authority to grant writs of habeas corpus to an individual in custody if that custody violates "the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). Petitioner argues that his re-detention without a pre-deprivation hearing violates the Due Process Clause of the Fifth Amendment to the United States Constitution (dkt. ## 1 at 11-14; 11 at 8-14), which prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. CONST. AMEND. V.

Respondents contend Petitioner is subject to mandatory detention under 8 U.S.C. § 1231 due to the IJ's removal order, making his re-detention lawful without a pre-detention hearing. (Dkt. # 9 at 5.) While § 1231 governs detention of noncitizens ordered removed, and mandates

---

[2] It appears Petitioner was at that point required to check in only once per year. (*See* dkt. # 12, Ex. 1 at 2.) Petitioner had reported as directed on February 5, 2025, and was not scheduled to report against until February 5, 2026. (*See id.*)

REPORT AND RECOMMENDATION
PAGE - 4

detention during a 90-day "removal period," this period begins, at the earliest, when the removal order becomes administratively final. *See* §§ 1231(a)(1)(A), (a)(1)(B), (a)(2).

An IJ's removal order does not become administratively final until it is affirmed by the BIA. 8 U.S.C. § 1101(a)(47). While Respondents maintain throughout their return that Petitioner is subject to a final order of removal, there is no dispute that Petitioner's appeal remains pending with the BIA. The record is therefore clear that Petitioner is not yet subject to a final order of removal and, thus, is not subject to mandatory detention under § 1231(a) at this time. The Court now turns to Petitioner's due process claim.

### A.    Legal Standard

The U.S. Supreme Court has made clear that the right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). To comply with procedural due process, an individual must have "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews'* three-part test applies in "the immigration detention context." 53 F.4th 1189, 1206-07 (9th Cir. 2022). This Court will therefore evaluate Petitioner's due process claim using the *Mathews* three-part test:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function

involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

### B.  Application of Mathews Test

*1.  Petitioner Has a Protected Interest in His Liberty*

Petitioner argues that he "has an exceptionally strong interest in remaining free from confinement and in receiving a hearing before his liberty is revoked." (Dkt. # 11 at 10.) The Court agrees.

Petitioner's interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). His arrest at home after nearly three years of ICE supervision, his detention, and his transfer to an out-of-state facility undoubtedly deprives him of an established interest in his liberty.

Respondents argue that "Petitioner's interest in his liberty *generally* does not mean that he possesses a separate or heightened liberty interest in the continuation of his conditional release." (Dkt. # 9 at 8.) Respondents further argue that Petitioner's release was subject to conditions and limited to the "pendency of his removal proceedings," which Respondent's view as concluded. (*Id.* at 8-9.)

The Supreme Court has held that "[f]reedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *see also Zadvydas*, 533 U.S. at 696 (a non-citizen has a liberty interest "strong enough" to challenge "indefinite and potentially permanent" immigration detention). Courts in this circuit have consistently found that the "government's subsequent release of [an] individual from custody creates 'an implicit promise' that the individual's liberty will be revoked only if they fail to abide by the conditions of their release."

*See, e.g.*, *Calderon v. Kaiser*, 2025 WL 2430609, at *2 (N.D. Cal. Aug. 22, 2025) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972).

When released on OREC in November 2022, Petitioner acquired a liberty interest protected by the Due Process Clause. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. Mar. 3, 2025) ("The Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty."). Petitioner's actions since release—reuniting with his family, maintaining employment, and complying with the conditions of his release—demonstrate his reasonable reliance on, and the weight of, that interest. Notably, Respondents do not allege Petitioner violated OREC conditions. Their argument against Petitioner's liberty interest rests solely on the mistaken premise that his removal proceedings are final. The first *Mathews* factor therefore weighs in Petitioner's favor.

### 2. Risk of Erroneous Deprivation of Liberty

Petitioner argues that the risk of erroneous deprivation of his liberty without a pre-detention hearing is high, especially given ICE's mistaken belief that his removal order was final and that § 1231 mandated his detention. (*See* dkt. # 11 at 11-12.)

Respondents contend that existing procedures are constitutionally sufficient, claiming non-citizens have no right to a pre-deprivation hearing under § 1231. (Dkt. # 9 at 9.) They also contend that Petitioner was on notice his OREC was only valid during the "pendency of his removal proceedings" and a removal order could lead to his re-detention. (*Id.*) Respondents' arguments, however, merely underscore the substantial risk of erroneous deprivation without a pre-detention hearing and the significant benefit of such a safeguard.

The record indicates that ICE authorities responsible for Petitioner's re-detention misapprehended the status of his removal proceedings, which remain pending. Thus, the purported justification for re-detaining Petitioner, *i.e.,* the issuance of a final order of removal, lacks any factual basis. A pre-deprivation hearing, before a neutral arbiter knowledgeable in immigration law, would have undeniably reduced this risk. The second *Mathews* factor therefore weighs heavily in favor of Petitioner.

        3.        Government's Interest in Re-Detention

Petitioner acknowledges the government's interest in enforcing immigration laws but argues its interest in doing so without a pre-deprivation hearing in this context is limited. (Dkt. # 11 at 12-13.) Respondents assert a strong government interest in returning non-citizens subject to a final removal order to custody. (Dkt. # 9 at 10.)

The government's interest in re-detaining Petitioner without a hearing is minimal, particularly where its justification is based on an inaccurate representation of the record of the administrative proceedings and an incorrect reading of applicable immigration laws. While providing a hearing before re-detaining an individual would require expending resources (money and time), such costs are outweighed by the risk of erroneously depriving an individual of a significant liberty interest. *See, e.g.*, *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019) ("If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). Thus, the third *Mathews* factor also weighs in favor of Petitioner.

In sum, all three *Mathews* factors weigh in Petitioner's favor. This Court therefore concludes that Petitioner should be released and only re-detained after a hearing before an IJ.

### C. Foreseeability of Removal

The parties have presented arguments regarding the foreseeability of Petitioner's removal. As Petitioner is not currently subject to a final order of removal, however, such arguments are premature.

### IV. CONCLUSION

For the foregoing reasons, this Court recommends Petitioner's federal habeas petition (dkt. # 1) be granted. The Court further recommends that Petitioner be released from custody immediately and that Respondents be prohibited from re-detaining him until after a hearing has been held before an immigration judge to determine whether detention is appropriate. A proposed Order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit not later than **fourteen (14) days** from the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar **fourteen (14) days** from the date they are filed. Responses to objections may be filed by **the day before the noting date**. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **December 8, 2025**.

DATED this 24th day of November, 2025.

MICHELLE L. PETERSON
United States Magistrate Judge